UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAWRENCE PARKER and JENNIFER
PARKER,

   Plaintiffs,
v.
              Case No. 8:07-cv-163-T-33TGW

GREAT LAKES DREDGE & DOCK
CORPORATION,

   Defendant.
_____/

GREAT LAKES DREDGE & DOCK
CORPORATION,

   Third-Party Plaintiff,

v.

RICHARD D. BASS and FRANK
PUISSEGUR,

   Third-Party Defendants.
_____/

**<u>ORDER</u>**

   This cause comes before the Court pursuant to cross motions for summary judgment. Third-Party Plaintiff Great Lakes Dredge & Dock Corporation ("GLDD") filed its Motion for Partial Summary Judgment Regarding the Third-Party Defendants' Fourth Affirmative Defense (Doc. # 27) on June 2, 2008. Third-Party Defendants Richard D. Bass and Frank Puissegur ("Bass and Puissegur") filed their Motion for Summary Judgment on Third-Party Complaint of Great Lakes Dredge & Dock Corporation (Doc. # 28) on June 3, 2008. GLDD

responded to Bass and Puissegur's motion for summary judgment on June 16, 2008 (Doc. # 30), and Bass and Puissegur responded to GLDD's motion for summary judgment on June 18, 2008 (Doc. # 31). For the reasons that follow, GLDD's motion for summary judgment is denied, and Bass and Puissegur's motion for summary judgment is granted.

I. **Background**

Plaintiffs' claims arise from a boating accident that occurred on the "navigable waters of Charlotte harbor," Florida, on or about January 28, 2006. (Doc. # 1 at ¶¶ 6-8). Plaintiffs were traveling on a vessel owned by Bass and being operated by Puissegur when the vessel struck partially submerged dredging pipes owned and controlled by GLDD, resulting in injury to Plaintiffs. (Doc. # 1 at ¶¶ 6-8; # 3 at ¶¶ 6-8). On August 14, 2006, Plaintiffs executed two written releases agreeing to accept a total sum of $20,000 from Progressive Express Insurance Company ("Progressive") as settlement of any claims they might have against Bass and Puissegur arising from the subject accident.[1] (Doc. # 27 at 3; # 27-2 at 2-3).

---

[1] GLDD asserts that the subject insurance policy was issued by Progressive in favor of Bass and provided $20,000 of coverage for personal injuries caused by Bass or the operator of the vessel. (Doc. # 27 at 3). Briefs submitted by Bass and Puissegur do not identify the holder of the Progressive policy, but Plaintiffs' deposition testimony reflects that Plaintiffs "presented a claim against either Mr. Bass and/or Mr. Puissegur's insurance company in an attempt to recover co-pay or medical payments" incurred due to the incident. (Doc. # 28-2 at 3-4).

The two release agreements ("Releases") are identical except for the order in which the Plaintiffs' names appear on the documents. (Doc. # 27-2 at 2-3). Each Release is titled "Release of All Claims"[2] and provides that, in consideration of the sum of $10,000 received from Progressive, Plaintiffs:

> release and forever discharge Richard Bass and Frank Puissegur of and from any obligation, liability, or responsibility under the laws of the State of Florida, and of any other state of the United States, in any way arising out of the subject boating accident which allegedly gave rise to this claim which occurred on or about January 28, 2006, at or near Gulf of Mexico, Boca Grande, FL. . . . It is understood and agreed that this settlement is in full compromise of a disputed claim as to questions of liability and as to the nature and extent of injuries and damages.

(Doc. # 27-2 at 2-3).

Almost six months after signing the Releases, on January 25, 2007, Plaintiffs filed a three-count complaint (Doc. # 1) against GLDD, asserting personal injury claims arising from the January 28, 2006, boating accident. On March 30, 2008, GLDD filed a third-party complaint against Bass and Puissegur, alleging negligence on the part of Bass and Puissegur and seeking indemnification or contribution for any judgment Plaintiffs may obtain against GLDD. (Doc. # 3 at 4-10). Bass and Puissegur's answer to GLDD's third-party complaint asserts six affirmative defenses. (Doc. # 8 at 5-6). Bass and Puissegur's fourth affirmative defense states:

---

[2] The title pre-printed on the Progressive release form reads: "Full Release of All Claims"; however, the word "Full" is crossed out by hand.

> Third Party Defendants allege that the claim for contribution in the Third Party Complaint is barred and/or estopped because [Plaintiffs] have entered into a full and complete settlement of all claims they may have, jointly or severally, against Richard D. Bass and/or Frank Puissegur with respect to the incident of 28 January 2006.

(Doc. # 8 at 5).

On June 2, 2008, GLDD filed its motion for partial summary judgment as to Bass and Puissegur's fourth affirmative defense, asserting that "[n]o settlement agreement exists that discharges plaintiffs Lawrence and Jennifer Parker's potential federal maritime law claims against [GLDD]." (Doc. # 27 at 1-2). GLDD contends that the "express, unambiguous language" of the Releases addresses only state law claims and does not relieve Bass and Puissegur of potential liability related to federal maritime claims. (Doc. # 27 at 6-8). Thus, GLDD argues that the Releases do not bar GLDD's claims for tort indemnity and contribution against Bass and Puissegur, and requests that Bass and Puissegur's fourth affirmative defense be stricken.

Bass and Puissegur concede that the Releases do not specify that any admiralty and maritime claims have been released by Plaintiffs. (Doc. # 28 at 8). However, Bass and Puissegur argue that GLDD's summary judgment motion should be denied because the title of the Releases and the reference in the Releases to the January 28, 2006 incident remove any genuine issue of material fact that Plaintiffs intended to settle <u>all</u> claims against Bass and

Puissegur and release <u>all</u> claims in favor of Bass and Puissegur (Doc. # 28 at 3, 8) (emphasis added).

Bass and Puissegur filed their motion for summary judgment on June 3, 2008, asserting that GLDD's claims for indemnity or contribution are neither necessary nor permitted because (1) Plaintiffs have settled and released all claims they may have, jointly or severally, against Bass and Puissegur; and (2) under general maritime law, non-settling tortfeasors are not permitted to bring actions for tort-based indemnity or contribution against settling tortfeasors. (Doc. # 28 at 5-8). Thus, Bass and Puissegur request that the Court grant summary judgment in their favor on GLDD's third-party complaint.

In response, GLDD reasserts that the plain language of the Releases executed by Plaintiffs relieve Bass and Puissegur from liability for state law claims only. GLDD further argues that parol evidence and the titles of the Releases should not be considered in interpreting the Releases because the contract language is clear and unambiguous in its meaning. (Doc. # 30 at 2-3). Because the parties agree that federal maritime law is the substantive law to be applied to GLDD's third-party claims, GLDD contends that the settlement and Releases do not bar GLDD's claims for indemnity or contribution.[3] (Doc. # 30 at 5).

---

[3] Bass and Puissegur concede that both Plaintiffs' claims against GLDD, and GLDD's claims against Bass and Puissegur, arise
(continued...)

The Court will consider each of the summary judgment motions in turn.

## II. **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials

---

[3](...continued)
from the boating accident that occurred on January 28, 2006 on the navigable waters of the United States and, therefore, "the substantive law applicable to determine the rights and duties of the parties is the general maritime law of the United States." (Doc. # 28 at 4-5).

on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.

Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**III. Analysis**

    **A.   GLDD's Motion for Partial Summary Judgment**

GLDD moves for summary judgment as to Bass and Puissegur's Fourth Affirmative Defense, which seeks to bar GLDD's contribution claim based on Plaintiffs' settlement and release agreements with Bass and Puissegur. GLDD asserts that the Releases do not address federal maritime claims and therefore do not act to bar GLDD's claims for contribution or indemnity from Bass and Puissegur. Bass and Puissegur argue that it is clear from the language of the Releases as a whole that Plaintiffs intended to release Bass and Puissegur from all claims or liability arising from the January 28, 2006, boating accident.

A ruling on the motion will necessarily be based on the Court's interpretation of the contracts of settlement and release executed by Plaintiffs. As a threshold issue, the Court must decide whether Florida law or federal law governs interpretation of the subject Releases. GLDD maintains that Florida law governs because the Releases only address settlement of state law claims. (Doc. # 27 at 4-5). Bass and Puissegur do not offer any argument on this issue.

Generally, federal maritime law governs interpretation of a settlement agreement that is a "maritime contract." F.W.F., Inc.

v. Detroit Diesel Corp., 494 F. Supp. 2d 1342, 1354 (S.D. Fla. 2007) (citing Alcoa Steamship Co. v. Charles Ferran & Co., 383 F.2d 46, 50 (5th Cir. 1967)). The character and nature of a contract is considered maritime if it "has reference to maritime service or maritime transactions." Nehring v. Steamship M/V Point Vail, 901 F.2d 1044, 1048 (11th Cir. 1990) (citations omitted). Maritime contracts "must pertain directly to and be necessary for commerce or navigation upon navigable waters." Id. (citations omitted).

The Releases at issue do not pertain directly to commerce or navigation on navigable waters. Although the contracts serve to settle claims arising from a boating accident that occurred on navigable waters, an insurance settlement and release cannot be characterized as a maritime service or transaction. In addition, the Releases are designated as Florida forms and were executed in Florida.[4] Bass and Puissegur have not objected to GLDD's assertion of Florida law. Thus, the Court will apply Florida contract law in interpreting the Releases.[5]

---

[4] The Releases indicate that they were "[e]xecuted at Tampa, Fla., this 14 day of August, 2006." (Doc. # 27-2 at 2-3). At the bottom of the Releases, it states: "Form No. 2114A (10-03) FL." (Id.)

[5] In any event, the state law and federal law governing contract interpretation and construction are substantially similar. See F.W.F., Inc., 494 F. Supp. 2d at 1356 (explaining that "general federal maritime law has adopted the general rules of contract interpretation and construction"); see also U.S. ex rel. Whitten v. Triad Hosp., Inc., 210 Fed. Appx. 878, 880 (11th Cir. 2006) (noting that "the contract interpretation principles applied under Georgia law and federal law are virtually the same").

Under Florida law, the construction and enforcement of a settlement agreement is governed by principles of Florida's general contract law. Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987). "[W]here the language of a settlement agreement is clear and unambiguous, courts may not indulge in construction or modification, and the express terms of the settlement agreement control." Hernandez v. Gil, 958 So. 2d 390, 391 (Fla. 3d DCA 2007); see also Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir. 1996) (stating that "where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions").

Where the terms of an agreement give rise to two different interpretations, each of which is reasonable based on the ordinary meaning of the words, the contract is ambiguous. Commercial Capital Res., LLC v. Giovanneti, 955 So. 2d 1151, 1153 (Fla. 3d DCA 2007) (citing Miller v. Kase, 789 So. 2d 1095, 1097-98 (Fla. 4th DCA 2001)). A court may look beyond the four corners of the contract to determine the intent of the parties only where the agreement is ambiguous, and where ambiguities exist, they are generally construed against the drafters. Key, 90 F.3d at 1549.

Reading the Releases as a whole and giving the words therein their ordinary meaning, the Court finds no ambiguity. The first paragraph of the three-paragraph agreement states that:

> [Plaintiffs], for and in consideration of the sum of ten thousand dollars and 00/100 ($10,000.00/100), the receipt

>of which is hereby acknowledged, do hereby for myself/ourselves; and for my/our heirs, executors, administrators, successors and assigns release and forever discharge Richard Bass and Frank Puissegur of and from any obligation, liability, or responsibility <u>under the laws of the State of Florida, and of any other state of the United States</u>, in any way arising out of the subject boating accident which allegedly gave rise to this claim which occurred on or about January 28, 2006, at or near Gulf of Mexico, Boca Grande, FL.

(Doc. # 27-2 at 2-3) (emphasis added). The settlement agreement makes no reference to liability for claims arising under federal law or admiralty law, and Bass and Puissegur concede that point.

Bass and Puissegur point to the title of the document, "Release of All Claims," as evidence that the Release is intended to extinguish all claims arising from the incident, including unspecified federal claims. However, the title does not contradict the limiting language of the Release and can be logically interpreted to be referring only to state law claims. As GLDD points out, the word "Full" at the beginning of the title is crossed out, which further signifies that the parties intended to limit the release in some way. Because the language of the agreements is clear and unambiguous, the Court need not apply rules of construction to discern the unexpressed intentions of the parties.[6] Thus, the Court finds that the Releases serve to relieve

---

[6] For this reason, Plaintiffs' deposition testimony, which has been submitted as extrinsic evidence of the parties' intent, is not properly considered in interpreting the Releases.

Bass and Puissegur of liability only as to state law claims arising from the incident.

The second issue for the Court to decide is whether the Releases act as a bar to GLDD's claim for contribution against Bass and Puissegur. Both parties to the third-party complaint concede that federal maritime law is the substantive law to be applied to the negligence claims brought by Plaintiff, and that maritime law governs GLDD's tort-based claims for indemnity or contribution. (Doc. # 27 at 2, 4; # 28 at 5, 8). Based on the undisputed facts set forth in the pleadings, the Court agrees that the boating accident at issue properly falls within maritime tort jurisdiction.[7]

Therefore, the Releases, which apply only to state law claims, do not relieve Bass and Puissegur of any proportionate liability they may have related to Plaintiffs' maritime tort claims. On the narrow issue presented in Bass and Puissegur's fourth affirmative defense, the Court finds that the terms of the Releases do not bar GLDD from seeking contribution from Bass and Puissegur.

### B. Bass and Puissegur's Motion for Summary Judgment as to GLDD's Third-Party Complaint

---

[7] Maritime law generally governs suits arising from injuries occurring on vessels in navigable waters. Kornberg v. Carnival Cruise lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984); see also Foremost Ins. Co. v. Richardson, 457 U.S. 668, 669, 674 (1982) (holding that an injury arising from negligent operation of a "pleasure boat" on navigable waters that results in a collision of two boats has a "sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction in the District Court").

Bass and Puissegur's summary judgment motion encompasses the broader question of whether GLDD is barred from asserting a claim for indemnity or contribution based on the fact that Plaintiffs entered into a $20,000 settlement with Bass and Puissegur. Bass and Puissegur assert that under federal maritime law, once a joint tortfeasor enters into a settlement with the injured party, a non-settling tortfeasor may not thereafter seek indemnity or contribution from the settling tortfeasor. GLDD's position is that, because the settlement entered into between Plaintiffs and Bass and Puissegur applies only to state law claims, it is not considered a "settlement" that would trigger the settlement bar rule.

As an initial matter, the Court finds that GLDD, Bass, and Puissegur are properly regarded as joint torfeasors, as each are alleged to be at fault for the injuries to Plaintiffs arising from the boating accident that occurred in the navigable waters off Boca Grande on January 28, 2006. Plaintiffs are asserting negligence claims against GLDD relating to the boating accident and the Releases state that Plaintiffs are accepting $20,000 to settle "a disputed claim as to questions of liability" regarding the same incident. (Doc. # 27-2 at 2-3). In addition, the parties' briefs indicate that they are rightly regarded as joint tortfeasors.[8]

---

[8] In their motion for summary judgment, Bass and Puissegur assert that "[t]here can be no genuine issue that given the record
(continued...)

Accordingly, it is proper to apply established maritime law regarding assessment of damages when joint tortfeasors are involved in a boating collision.

Since the Supreme Court decided <u>United States v. Reliable Transfer Co.</u> in 1975, the established rule for determining liability among joint tortfeasors in maritime personal injury cases has been to distribute the liability among the tortfeasors according to each party's comparative degree of fault. 421 U.S. 397, 411 (1975). Following that decision, however, courts struggled with the problem of what effect a settlement by one tortfeasor should have on the liability of the remaining tortfeasors. <u>See</u> <u>Great Lakes Dredge & Dock Co. v. Chevron Shipping Co.</u>, 957 F.2d 1575, 1578-80 (11th Cir. 1992) (discussing the development of the law regarding distribution of liability among joint tortfeasors in maritime actions). It was generally agreed that the non-settling tortfeasor's liability should be reduced by the amount of the settlement, but courts were split as to how to calculate the settlement credit. <u>Id.</u> at 1579; <u>McDermott, Inc. v. AmClyde</u>, 511 U.S. 202, 208 (1994).

---

⁸(...continued)
in this matter, that with respect to Plaintiffs' claims for relief, . . . [GLDD, Bass, and Puissegur] were alleged to be joint tort feasors." (Doc. # 28 at 7). In their motion, GLDD admits that "if [Bass and Puissegur] had entered into a settlement that addressed the plaintiffs' federal maritime claims, then GLDD could not proceed with its third party claims for contribution/indemnity, but would receive an offset for the percentage of fault attributable to [Bass and Puissegur] at trial." (Doc. # 27 at 7, n. 2).

In 1994, the Supreme Court settled the issue in two companion decisions. In McDermott, Inc. v. AmClyde, the Court held that a proportionate share approach to determining the credit should be utilized, whereby the non-settling defendant receives "a credit for the settling defendants' 'proportionate share' of responsibility for the total obligation." 511 U.S. at 209. This approach, the Court reasoned, would eliminate suits for contribution from the settling defendants "because the non-settling defendants pay no more than their share of the judgment." Id. The companion case of Boca Grande Club, Inc. v. Florida Power & Light Company, Inc. confirmed that, pursuant to the proportionate share approach established in AmClyde, a plaintiff's settlement with one torfeasor bars a suit for contribution by the non-settling defendant. 511 U.S. 222, 222 (1994).

This Court must now determine whether the law established in AmClyde and Boca Grande Club should be applied to bar GLDD's claims for contribution and indemnity where a settlement has been reached between Plaintiffs and Bass and Puissegur as to liability for injuries arising from the boating accident, but Bass and Puissegur have only been legally released from liability for state law claims. Applying the reasoning used by the Supreme Court in adopting the proportionate share approach, the Court concludes that the $20,000 payment made by Bass and Puissegur's insurer to Plaintiffs to compensate them for injuries arising from the January

-15-

28, 2006, boating accident constitutes a settlement that precludes any action for contribution or indemnity against Bass and Puissegur.

In AmClyde, the Court engaged in lengthy discussion regarding the three possible options for determining the credit due non-settling tortfeasors, and why it favored the proportionate share approach. AmClyde, 511 U.S. at 208-217. The Court ultimately chose to adopt the proportionate share rule because it is most consistent with the proportionate fault approach of Reliable Transfer, it promotes settlement, and it favors judicial economy. Id. at 212, 215-17. The Court's primary motivation was its desire to avoid "inequitable apportionments of liability." Id. at 212-14, 221. The Court rejected the "pro tanto" approach, which applies the settling amount as a direct credit to the total judgment against all defendants, because it often results in the non-settling defendants paying more than their fair share of the damages. Id. at 208-14.

In the instant case, Plaintiffs voluntarily entered into settlement agreements with Bass and Puissegur months before this suit was initiated, in which they agreed to accept $20,000 in "full compromise" of their claims against Bass and Puissegur.[9] (Doc. #

---

[9] Plaintiffs' deposition testimony also reflects that both Plaintiffs were represented by counsel at the time that they accepted the settlement and executed the Releases. (Doc. # 28-2 at 5; # 28-3 at 4).

27-2 at 2-3). Plaintiffs have honored this settlement and have not brought suit against Bass and Puissegur. Public policy of the State of Florida, whose law has been found to apply to this settlement contract, highly favors settlement agreements and courts will "seek to enforce them whenever possible." Hernandez, 958 So. 2d at 391. Regardless of whether the Releases are found to relieve Bass and Puissegur of liability as to maritime tort claims, it is clear that the agreements do settle Plaintiffs' claims, at least as to state law claims, arising from the subject accident. It is equally evident that Plaintiffs are satisfied with their settlement as to Bass and Puissegur, as they have not asserted any claims against Bass and Puissegur. Therefore, the Court finds that Bass and Puissegur are rightly considered "settling tortfeasors" for the purpose of determining whether a settlement bar applies to GLDD's counterclaims.

Application of the proportionate share rule and the resultant settlement bar will not be prejudicial to GLDD, as GLDD will only be responsible for paying their proportionate share of the judgment, the same amount they would pay without contribution from Bass and Puissegur. Under the proportionate share approach, any shortfall in Plaintiffs' recovery of damages will rightfully be a result of their voluntary settlement with Bass and Puissegur. GLDD will not be forced to shoulder disproportionate liability if it turns out that Plaintiffs negotiated a meager settlement with Bass

and Puissegur. In addition, because the apportionment of liability will occur at trial, GLDD will have the opportunity to describe Bass and Puissegur's role in the incident and to "argue the 'empty chair' in the hope of convincing the jury that [Bass and Puissegur] were exclusively responsible for the damage." AmClyde, 511 U.S. at 217.

The Court finds that application of the proportionate share rule to the instant case is appropriate. Under the reasoning of AmClyde and Boca Grande Club, GLDD's claim for contribution against Bass and Puissegur is "neither necessary nor permitted." Boca Grande Club, 511 U.S. at 222. It is axiomatic that GLDD's claim for indemnity is equally unnecessary because, under the proportionate share approach, GLDD will not be required to pay any damages if the jury determines that it is without fault in the accident. See In re Air Crash Near Peggy's Cove, Nova Scotia on September 2, 1998, Case No. 99-5998, 2004 WL 2486263, at *3 (E.D. Pa. 2004) (noting that principles of proportionate fault apply equally to both contribution and indemnity and under this doctrine, "a defendant will never be held liable for another's degree of fault"). As the AmClyde Court recognized, the proportionate share rule still permits a non-settling defendant to try to persuade a jury that the settling party was entirely at fault. AmClyde, 511 U.S. at 209, 217. If GLDD is successful in demonstrating that it is without fault in the incident then it will owe nothing, and an

indemnity claim will not lie. Thus, regardless of the jury's determination as to GLDD's proportionate liability, GLDD has no need for either indemnity or contribution from Bass and Puissegur.

Pursuant to the proportionate share rule established in AmClyde and Boca Grande Club, GLDD's third-party claims for contribution or indemnity against Bass and Puissegur are not permitted because Plaintiffs have voluntarily settled their claim against Bass and Puissegur for $20,000. Judgment in favor of Bass and Puissegur is therefore appropriate as to GLDD's Third-Party Complaint. Based on this holding, GLDD's motion for partial summary judgment as to Bass and Puissegur's fourth affirmative defense must be denied as moot.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

(1) The Motion for Summary Judgment by Third-Party Defendants, Bass and Puissegur on Third-Party Complaint of Great Lakes Dredge & Dock Corporation (Doc. # 28) is **GRANTED.**

(2) The Clerk is directed to enter judgment in favor of Richard D. Bass and Frank Puissegur as to Great Lakes Dredge & Dock Corporation's Third-Party Complaint.

(3) Defendant's Motion for Partial Summary Judgment Regarding the Third-Party Defendants' Fourth Affirmative Defense (Doc. # 27) is **DENIED** as moot.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 7th day of October, 2008.

／s／ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record